## Southern Express Company v. Commonwealth.

(Decided December 17, 1915.)

### Appeal from Lincoln Circuit Court.

1. Obstructing Justice—Removal of Books and Records From Jurisdiction of Court.—Where upon the charge of obstructing justice by removing from the State and from the jurisdiction of the court its books and records knowing that they would be called for and demanded by the grand jury as evidence, the evidence showed that the records and books were removed from the State fifteen or twenty days before the grand jury convened and before any process was issued, there being no evidence that any officer of the company had any knowledge that their production would be demanded, there should have been an instruction to find for the defendant.

2. Obstructing Justice—Removal of Books and Papers From Jurisdiction of Court.—The fact that grand juries in other counties in a judicial district had demanded the production of such books raised no presumption that the grand jury of another county, to be organized fifteen or twenty days in the future, and the personnel of which was not and could not have been known, would also demand their production in that county.

3. Criminal Law—Conviction Upon Suspicion—Evidence.—A defendant may not be convicted upon mere suspicion; there must be such evidence, direct or circumstantial, as would authorize an impartial jury to say that he was guilty beyond a reasonable doubt, and particularly so in cases where the essence of the offense is the intent.

R. C. ALSTON and CHARLES C. FOX for appellant.

JAMES GARNETT, Attorney General; D. O. MYATT, Assistant Attorney General, and EMMETT PURYEAR, Commonwealth's Attorney, Thirteenth District, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

At the May term, 1913, of the Lincoln Circuit Court appellant was indicted by the grand jury charged with the offense of obstructing justice by removing its books, papers, and records containing evidence of the violation of the prohibition laws in force in that county, from the State of Kentucky and from the jurisdiction of the court, knowing at the time that such evidence would be called for and demanded by the grand jury of that county.

The circuit court sustained a demurrer to this indictment, but upon appeal to this court the judgment was reversed, the indictment held to be sufficient, the court holding in substance that the constitutional privilege against self crimination does not extend to corporations, and that the corporation may not upon that ground resist a demand by the State, expressed in lawful process, that it produce its books before a grand jury, although they may contain evidence incriminating the corporation. Commonwealth v. Southern Express Company, 160 Ky., 1.

Upon a return of the case a trial was had, the defendant found guilty and a fine of $2,500.00 assessed against it, and it is here on appeal.

The only ground for reversal necessary to consider is whether appellant was entitled to the peremptory instruction asked for by it at the conclusion of the testimony offered by the Commonwealth, and again at the conclusion of all the evidence. A determination of this question involves an examination of the evidence.

Boyle and Mercer counties are in the same circuit court district as Lincoln county, and at the April term of the Boyle Circuit Court the agents of appellant company in that county were summoned before the grand jury and required to bring the books of the company showing the deliveries of spirituous, vinous and malt liquors from their several offices between certain dates; the agents appeared and produced their books and the grand jury of that county returned a number of indictments against appellant, charging it with the unlawful deliveries of such liquors in local option territory.

The May term of the Mercer Circuit Court convened on May 5th, 1913, and similar process was served upon the agents of appellant in that county; in that court, however, one of appellant's agents declined to produce its books, and an attorney for appellant appeared in court and argued the question whether appellant might be required to produce its books, and the question being submitted to the court it was decided that it might be so required, and the books were produced. In that court, too, several indictments were returned against appellant

charging it with unlawfully delivering spirituous liquors in local option territory.

The May term of the Lincoln Circuit Court convened on the 26th of May, 1913, and in that court similar process was served upon the local agents of appellant company directing them to produce before the grand jury the books of the company covering certain periods. They appeared before the grand jury and stated they could not produce the books covering part of the period specified; that on the 9th or 10th of May they had received orders from the central office at Chattanooga, Tenn., which had control over all the offices in Lincoln county, directing that certain books and records of the company be sent into the central office, and that this had been done by the several agents about the 12th or 15th of May.

After this development without any further effort, whatsoever, to compel the production of the books and without the issual of any other process the grand jury at the same term of court returned this indictment.

It will be observed from this evidence that under orders from the central office of the company given at least two weeks before the May term of the Lincoln Circuit Court convened, the books were sent to that office at least ten or twelve days before the convening of that court; that at the time the order was issued and the books sent no request had been made for them, no process had been issued or executed demanding that they be produced, and there is nothing in the record, more than a bare suspicion, to show that the corporation expected that they would be demanded, or had any notice, direct or indirect, that it would be expected to produce them at the May term of the Lincoln Circuit Court.

The books were under the control of the central office, the company was within its rights in requiring them to be taken to Chattanooga, and there may have been some compelling business reason for so doing independent of and not connected with prosecutions for the illegal shipment and deliveries of liquors.

The gravamen of the offense, the very offense itself, consisted in having these records removed from the jurisdiction of the court *knowing* that they would be called for and required to be produced before the grand jury. As before stated, the evidence is that they were sent from the State long before that grand jury convened, and there is nothing in the record which brings home to any officer of the company any knowledge that their production would be demanded at that term of court. Indeed from the very nature of the circumstances there could have been no such knowledge; the grand jury had not convened, under the law no one could have known

who would constitute its membership; it could have issued no process until it was organized; the fact that grand juries in other counties in that judicial district had demanded the production of such books raised no presumption that the grand jury of Lincoln county, to be organized fifteen or twenty days in the future, and the personnel of which was not known, would demand their production in that county. The grand jury is a body entirely independent of the Commonwealth's Attorney, and even of the judge of the court himself, and how the fact that the grand jury in one county had taken such steps raises a presumption that the grand jury in another county which has not been organized and the personnel of which could not have been known, would do so, we can not see. At most the circumstances create a mere suspicion that the company because of the prosecutions in the other counties based upon its books had directed its books in Lincoln county to be sent out of the State before they were called for, before any process was issued demanding them, and before it could have been known that they would be demanded.

The company having the right to control its books and records, and having directed that they be set outside of the State, under such circumstances as merely create a suspicion that they were attempting to avoid prosecutions, and there being no further evidence of a disposition upon its part to obstruct such prosecutions—it having produced the books on the trial of this case and presumably would have produced them sooner if called upon—we think there is no such evidence in the record as justifies the submission of the case to the jury.

Defendants may not be convicted upon mere suspicion; there must be such evidence, direct or circumstantial, as will authorize a fair, impartial jury to say that they are beyond a reasonable doubt guilty, and particularly is this so in cases where the essence of the offense is the *intent*.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.