## UNITED STATES v. POLAKOFF et al.

### No. 329.

Circuit Court of Appeals, Second Circuit.

June 28, 1941.

Louis Halle, of New York City (Irving Spieler and Samuel Mezansky, both of New York City, on the brief), for appellants.

Mathias F. Correa, U. S. Atty., of New York City (William F. Young and Robert L. Werner, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

On an appeal from a previous conviction in this case, a new trial was ordered because evidence improperly secured had been admitted. United States v. Polakoff, 2 Cir., 112 F.2d 888, certiorari denied 311 U.S. 653, 61 S.Ct. 41, 85 L.Ed. ——. At that time we expressed the view that the evidence was otherwise adequate to justify conviction. But the point now pressed upon us was not then directly considered; and in view of its importance, it merits further analysis. In effect it is that a corrupt endeavor to obstruct justice through influence of a court official requires an attempted debauching of that official, and not merely a use of otherwise legitimate arguments for concealed or falsified ends. The issue is seemingly raised by requests to charge, though we do not find their exact wording except as partially reproduced in defendants' assignments of error—in form so vague as to highlight the elusive nature of the attempted distinction.

The evidence, however, squarely presents the question. One Kafton, having pleaded guilty to violation of the federal

narcotic laws, was out on bail awaiting sentence. Defendant Albert, who was in the bonding business, approached him and offered for a price to secure a low sentence for him. Actually Kafton was then acting as informer for the Narcotic Bureau, and he immediately reported the incident to that Bureau and was instructed to continue negotiations. A definite agreement was thereafter made whereby for $500 to be paid Albert the reduced sentence would be secured. Meanwhile Polakoff, also a bondsman, was attempting to influence the Assistant District Attorney in charge of the case to recommend a reduced sentence and to bring it before a certain judge who would probably reduce it still more, following his custom with respect to prosecutors' recommendations. Polakoff had known the attorney socially, and the latter and his wife had been entertained by Polakoff and his wife before any matters connected with this case arose. Polakoff thereafter, by repeated and importunate advances, tried to persuade the attorney to take the requested steps, at first saying that Kafton's bond had been written by his company (which was not the fact), and that he was trying to dispose of the case, among others so written; thereafter he laid his sole interest in the matter to the fact that a local politician wanted a short sentence for Kafton, that this politician was in a position to put men to work and had done so for several of Polakoff's friends, and that Polakoff felt indebted to him. Eventually, at a time when Polakoff and Albert both assured Kafton that the arrangement was going through, in response to which Kafton agreed to make the payment, and Albert made an advance of money to Polakoff, the two were arrested. Indictment, trial, and conviction followed.

Here it is clear that the attempted use of influence was doomed to failure from the beginning, since Kafton and the attorney and the government officials were working together and were fully apprised of all the facts which the defendants were concealing except where their purpose required disclosure. Defendants thus assert that, whether or not they were guilty of attempting to secure money by false pretenses, they were not guilty of any offense under the statute in question, 18 U.S.C.A. § 241; and they cite a statement from Rosner v. United States, 2 Cir., 10 F.2d 675, 676, to the effect that an intended bribery or an attempt to obtain money under false pretenses is not this statutory offense.

The statute, 18 U.S.C.A. § 241, goes back to § 2 of the Act of Mar. 2, 1831, 4 Stat. 487, 488, of which § 1—now 28 U.S.C.A. § 385—defined the power of the United States courts to punish for contempt. See Sinclair v. United States, 279 U.S. 749, 762, 49 S.Ct. 471, 73 L.Ed. 938, 63 A.L.R. 1258; Ex parte Savin, 131 U.S. 267, 274, 9 S.Ct. 699, 33 L.Ed. 150; United States v. Potash, 2 Cir., 118 F.2d 54, certiorari denied 61 S.Ct. 1103, 85 L.Ed. ——. It provides that "whoever corruptly * * shall endeavor to influence, intimidate, or impede any * * * officer in or of any court of the United States * * * or who corruptly * * * shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein" shall be subject to a fine or imprisonment or both. It is evident that our chief point of inquiry herein concerns the words "corruptly endeavor." Does one corruptly endeavor to obstruct justice if for supposedly disinterested reasons, though actually in expectation of financial gain, he uses what influence he has with the District Attorney to secure favorable disposition of a pending criminal case?

Exact precedents appear to be lacking, but the decisions under the statute are illuminating in their unwillingness to limit the court's protection from improper obstructions. In United States v. Russell, 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553, it is pointed out that the "endeavor," not the corruption—there of a juror—was the gist of the offense, and hence that "experimental approaches" towards offering a juror a bribe, in the shape of inquiries, made of his wife before he had been selected or sworn, concerning his attitude towards the accused, constituted the offense. That success in the endeavor is not necessary is also held in Thomas v. United States, 8 Cir., 15 F.2d 958, while Bedell v. United States, 8 Cir., 78 F.2d 358, certiorari denied 296 U.S. 628, 56 S.Ct. 151, 152, 80 L.Ed. 447, states the converse, namely, that, while success in corruption is not a necessary ingredient, nevertheless it is an aggravation of the crime. In Sinclair v. United States, supra, 279 U.S. at pages 762, 765, 49 S.Ct. 471, at page 475, 73 L.Ed. 938, 63 A.L.R. 1258, the decision goes on the other or contempt section of the original statute, though the court cites this section as seemingly also in point. It

held there was an obstruction of justice in the systematic shadowing of jurors, though unknown, and without approach, to any one of them. The court, referring to the contention that to establish misbehavior under the contempt section "it was essential to show some act both known by a juror and probably sufficient to influence his mind," said: "We cannot accept this view. It would destroy the power of courts adequately to protect themselves— to enforce their right of self-preservation. * * * We can discover no reason for emasculating the power of courts to protect themselves against this odious thing."

In Bosselman v. United States, 2 Cir., 239 F. 82, 86, where the defendant had requested certain persons to make alterations in books material to a grand jury inquiry, it was claimed that he did not do so "corruptly," since there was no bribery. But the court said: "The word 'corruptly' is capable of different meanings in different connections. As used in this particular statute, we think any endeavor to impede and obstruct the due administration of justice in the inquiries specified is corrupt. To construe the acts as requiring that such an effort should be accompanied by payment or promises of payment of money would quite unreasonably restrict the obvious purpose of the legislation." In Astwood v. United States, 8 Cir., 1 F.2d 639, a surety on the bond of an accused was held guilty for persuading the accused not to appear in court when required ("corruptly," because he collected money for the alleged settlement of the case). Even an approach to a prosecuting witness for a statement contradicting testimony before the grand jury is viewed with disfavor, though it may not be criminal if the testimony was believed false and no undue influence was used. Harrington v. United States, 8 Cir., 267 F. 97, Stone, J., dissenting. Rosner v. United States, supra, is not opposed to this general attitude towards the statute, but turned on the collateral point that, since a mere request by the prosecutor that an accused appear could be disregarded as not compulsory process, advice to that end was not illegal. United States v. Polakoff, supra.

■ We think the wording of the statute is significant. It is not alone the corrupt obstruction which is defined as a crime, though that is in terms also covered ("corruptly * * * shall influence, obstruct, or impede, or endeavor to," etc.). But the corrupt endeavor alone is twice forbidden. Here Polakoff was endeavoring to persuade the Assistant District Attorney to be lenient with Kafton, for reasons falsely assigned. That endeavor was corrupt because it was a fraud. Actually he was working for himself when in appearance he was working for Kafton. It is as "corrupt" to persuade a public officer by lies as by bribes; indeed, to influence him by fraud is not far afield from influencing him by "threats or force," also prohibited by the statute. To misrepresent one's motives in such an effort is really a fraud. Marshall v. Baltimore & Ohio Railroad Co., 16 How. 314, 335, 57 U.S. 314, 14 L.Ed. 953. Kafton's promise to pay for the effort, while here an important link in the chain of evidence, only led to, but was not itself, the ultimate criminal act. That occurred when the false persuasion was attempted.

■ If the statute applies, proof of a conspiracy to its violation by Albert and Polakoff was clear; and we see no reason why a conspiracy to make the prohibited endeavor is not within the terms of the conspiracy statute, 18 U.S.C.A. § 88. See United States v. Potash, supra. The defense of entrapment was for the jury, which found against the accused. Sorrells v. United States, 287 U.S. 435, 53 S. Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249; Meyer v. United States, 9 Cir., 67 F.2d 223; Wall v. United States, 5 Cir., 65 F.2d 993.

Affirmed.